UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KEFVON JEROME CAMP,<br><br>    Plaintiff,<br><br>    v.<br><br>M. VALDEZ,<br><br>    Defendant. | Case No. 24-cv-04771-RMI<br><br>**ORDER RE: DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. No. 24 |

Now pending before the court is Defendant's Motion for Summary Judgment (dkt. 24), seeking summary judgment in favor of Defendant as to Plaintiff's Fourteenth Amendment due process claim as barred under *Heck v. Humphrey*, 512 U.S. 477 (1994), on the merits, and on qualified immunity grounds. Plaintiff filed an opposition (dkt. 27), and Defendant filed reply (dkt. 33). Plaintiff filed a sur-reply (dkt. 37).[1] For the reasons stated below, Defendant's Motion is granted.

## MOTION FOR SUMMARY JUDGMENT
## BACKGROUND

Plaintiff, a state inmate, sued an officer at Salinas Valley State Prison ("SVSP") pursuant to 42 U.S.C. § 1983 for violating his due process rights during a disciplinary hearing. According to the amended complaint (dkt. 8), Plaintiff and five other individuals were issued disciplinary notices by Sgt. Rodriguez De La Paz for delaying a peace officer. A month later, Defendant M. Valdez called Plaintiff for a disciplinary hearing without any notice. Valdez was the senior hearing officer and Plaintiff pled guilty without hearing any details of the charges so that he could go back

---

[1] The Court denied Defendants' motion to strike Plaintiff's sur-reply. (Order, Dkt. 44.)

to the yard. When Plaintiff learned it was regarding the delaying of a peace officer incident, he said he was not guilty. Valdez said it was too late and ordered Plaintiff taken to the yard, depriving him of his right to be heard. Plaintiff later learned that the disciplinary charges were dropped against the other individuals. Plaintiff also contends that the video footage from Sgt. De La Paz's body camera should have shown that he did not delay a peace officer, but Valdez ignored the evidence. As a result of his guilty plea, Plaintiff alleges that he lost privileges for 60 days, including talking to his family, going to the yard, and receiving food packages, which resulted in him losing a significant amount of weight. Plaintiff states that he appealed the disciplinary finding, and it was later overturned. He seeks money damages.

**Undisputed Facts**

The salient facts are undisputed. During the relevant time, Plaintiff was incarcerated at SVSP. Ruhparwar Decl. ¶ 2, Dkt. 24-6; Ex. A, Pl.'s Dep. at 16:11-14, 35:12-15. On January 27, 2024, Plaintiff received a Rules Violation Report ("RVR") from Sgt. De La Paz for delaying a peace officer in the performance of his duties in connection with an incident that occurred in the yard.[2] *Id.* at 16:16-18, 17:6-12. In the RVR (Log No. 7399674), Sgt. De La Paz described the incident as follows:

> On January 27, 2024, at approximately 1140 hours, while conducting my duties as Z9 Sergeant. During yard recall Inmate Camp (BC7449 Z9-114) was refusing to [go] back to his cell from yard. Inmate Camp said, "I am not going in". I gave Camp a direct order to go back to his cell. Inmate Camp did not comply he refused to come to the food port and be placed in handcuffs. I informed Inmate Camp that he would be receiving a Rules Violation Report (RVR) 115 for the violation of 3005(a)-[01]-Delaying a peace officer in the performance of their duty's [*sic*]. Z9 yard was stopped for approximately 2 hours due to him taking the Z9 yard hostage.

Valdez Decl. ¶ 8, Ex. A, Dkt. 24-3.

The RVR was served on Plaintiff on January 31, 2024. *Id.* ¶¶ 9-10, Ex. B at 1; Ruhparwar

---

[2] Defendant's counsel admits to inadvertently and incorrectly stating that Plaintiff was found guilty of "conspiring to possess a cell phone" in the "Issues Presented" portion of their summary judgment motion. (Def.'s Reply at 5, Dkt. 33.) Plaintiff objected to this reference in his opposition. (Pl's Opp. at 3, 6.) Accordingly, the Court will disregard this reference without requiring Defendant to file notice of errata.

1    Decl. ¶ 2, Ex. A at 16:19-17:5, 51:10-17. The hearing took place on February 24, 2024, before

2    Defendant Valdez as the Senior Hearing Officer ("SHO"). *Id.* ¶ 10, Ex. B. Plaintiff was present for

3    the hearing. *Id.* ¶ 11. There was no need to assign Plaintiff a Staff Assistant pursuant to California

4    Code of Regulations, Title 15, Section 3315(d)(2)(A), nor did he request staff assistance during

5    the hearing. *Id.* ¶ 12. Plaintiff was competent to understand the charges and prepare a defense. *Id.*

6    ¶ 10, Ex. B at 1.

7    Plaintiff pled guilty at the beginning of the hearing. *Id.* ¶ 13. Valdez reviewed the Program

8    Sergeant's Body Worn Camera ("BWC") footage from January 27, 2024. *Id.* ¶ 14. Plaintiff

9    previously reviewed the footage on January 31, 2024, and he did so again at the hearing. Pl.'s

10   Dep. at 17:20-18:1, 18:24-21:8. The footage did not display Plaintiff on video nor the small-

11   enclosed yards where the incident underlying Plaintiff's RVR occurred. *Id.* ¶ 13. Rather, it

12   depicted the enclosed yards on the opposite side of the building. *Id.* Valdez did not take this video

13   footage into account for finding Plaintiff guilty. *Id.* ¶ 10, Ex. B at 5, ¶ 14. There was no other

14   footage available. Ramos Decl. ¶ 14, Ex. B at 17.

15   Plaintiff did not ask for any witnesses to be called, and the hearing results do not indicate

16   that he did so. *Id.* ¶¶ 10, 15, Ex. B. Plaintiff did not provide evidence to discredit Sgt. De La Paz's

17   RVR. *Id.* ¶ 16. Valdez found Plaintiff guilty of delaying a peace officer in the performance of

18   duties based on a preponderance of the evidence, i.e., Plaintiff's guilty plea and Sgt. De La Paz's

19   RVR. *Id.* ¶¶ 10, 14, 18. As a result, Defendant issued a loss of 61 days of good time credits. *Id.* ¶

20   10, Ex. B at 5; Aguilera Decl. ¶ 5; Ruhparwar Decl. ¶ 2, Ex. A at 32:13-19, 33:10-11. The credit

21   loss was not later overturned. Aguilera Decl. ¶ 6; Ruhparwar Decl. ¶ 2, Ex. A at 34:9-10.

22   On March 18, 2024, Plaintiff submitted grievance Log No. 534790. Ramos Decl. ¶ 9, Ex.

23   A. Plaintiff alleged that Lt. Valdez incorrectly found him guilty of delaying a peace officer

24   because the Program Sgt.'s BWC footage that was available and reviewed at the hearing did not

25   display Plaintiff refusing to exit the yard. *Id.* ¶ 10.

26   On March 30, 2024, the prison's Office of Grievance ("OOG") denied the grievance.

27   Ramos Decl. ¶ 11. Plaintiff appealed to the Office of Appeals ("OOA"). *Id.* ¶ 12. On June 13,

28   2024, the OOA granted the grievance based on deficiencies identified within the prison's initial

United States District Court
Northern District of California

review of the claim and ordered the OOG to open a new offender grievance tracking log number to address those deficiencies. *Id.* ¶ 13. Specifically, the OOA instructed SVSP to address if the BWC footage proved that Sgt. De La Paz falsified the RVR and explain in the OOG's decision if the prison's conclusions changed the outcome of the hearing official's finding that Plaintiff was guilty. *Id.* ¶¶ 13, 15.

SVSP's OOG then opened a new grievance tracking number, Log No. 579644. *Id.* ¶¶ 14-15, Ex. B. On or around August 9, 2024, a new review was completed per the OOA instructions. *Id.* ¶ 15. A new supervisor, Lt. Thich, conducted the review and interviewed Defendant Valdez. *Id* ¶ 14, Ex. B at 18, ¶ 15. In compliance with the OOA's instructions, Associate Warden Pennisi reviewed and approved the following findings:

> Audio Video Surveillance System (AVSS) of Body Worn Camera (BWC) Z Program Sgt ASU 280371 on 01/27/2024 between the period 11:58 hour and 12:01 hour was conducted. The BWC footage does not display Camp on video. Upon review, reporting employee noted the time of rule violation was a 1140 hour. The incorrect time frames were requested for Camp's RVR # 7399674 – Delaying a Peace Officer in the Performance of Duties. No other footage of 01/27/2024 is available for review. Senior Hearing Officer (SHO) did note during hearing the AVSS being available, but AVSS was not impactful and audio/video evidence was not relied upon to determine the finding in this case. SHO also annotated in the Evidence section, "3. Review of Sergeant De La Paz' Body Worn Camera (BWC) footage on 01/27/2024. BWC footage did not show Camp refusing to exit the yard module and return to his cell." Sergeant Rodriguez De La Paz was interviewed regarding Camp's RVR# 7399674. Sergeant Rodrigez De La Paz confirmed that Camp was given a direct order to return to his cell from the yard module. Camp refused to comply with his orders to come to the food port and placed in handcuffs. Camp remained in the yard module for approximately 2 hours taking Z9 yard hostage. Sergeant Rodriguez De La Paz confirmed the time of violation was approximately 2 hours and not between 11:58 – 1201 hour.

*Id.* ¶¶ 14-15, Ex. B at 17.

## LEGAL STANDARD

Summary judgment on a claim or defense is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). To prevail, a party moving for summary judgment must show the absence of a genuine issue of material fact with respect to an essential element of the nonmoving party's claim, or to a defense on which the nonmoving party will bear the burden of persuasion at

4

trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this showing, the burden then shifts to the party opposing summary judgment to identify "specific facts showing there is a genuine issue for trial." *Id*. The party opposing summary judgment must then present affirmative evidence from which a jury could return a verdict in that party's favor. *Anderson v. Liberty Lobby*, 477 U.S. 242, 257 (1986).

On summary judgment, a court will draw all reasonable factual inferences in favor of the nonmovant. *Id*. at 255. In deciding summary judgment motions, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Id*. However, conclusory or speculative testimony or allegations do not raise genuine issues of fact and are insufficient to defeat summary judgment. *See e.g., Thornhill Publ'g Co., Inc. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979).

Inmates facing disciplinary charges that could result in the loss of sentencing credits are entitled to due process. *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). *Wolff* established five procedural requirements: (1) written notice of the charges to the prisoner sufficient to prepare a defense, *id.* at 564; (2) notice provided at least 24 hours before the disciplinary hearing, *id.*; (3) a written statement by the factfinder as to the evidence relied on the reason for the decision, *id.*; (4) opportunity to call witnesses and present documentary evidence in his defense "when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals," *id.* at 566; and (5) where an illiterate inmate is involved or when the issues are complex, the assistance of a fellow inmate or designated staff, *id.* at 570. In *Superintendent v. Hill*, 472 U.S. 445, 454 (1985), the Court held that the revocation of good-time credits does not comport with the minimum requirements of procedural due process in *Wolff* unless the findings of the prison disciplinary board are supported by some evidence in the record. The standard for the modicum of evidence required is met if there was some evidence from which the conclusion of the administrative tribunal could be deduced. *See id.* at 455.

*Heck v. Humphrey*, 512 U.S. 477 (1994), requires that before a 42 U.S.C. § 1983 plaintiff may recover damages for an allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, he

1  must first prove that the conviction or sentence has been reversed on direct appeal, expunged by
2  executive order, declared invalid by a state tribunal authorized to make such determination, or
3  called into question by a federal court's issuance of a writ of habeas corpus. *Id.* at 486-487. A
4  claim for damages regarding a conviction or sentence that has not been so invalidated is not
5  cognizable under § 1983. *Id.* at 487. *Heck* also bars a claim of unconstitutional deprivation of time
6  credits because such a claim necessarily calls into question the lawfulness of the plaintiff's
7  continuing confinement, i.e., it implicates the duration of the plaintiff's sentence. *See Edwards v.*
8  *Balisok*, 520 U.S. 641, 645 (1997) (applying *Heck* bar to claim that officials used unconstitutional
9  procedures in a disciplinary hearing that resulted in the deprivation of time credits if "the nature of
10 the challenge to the procedures [is] such as necessarily to imply the invalidity of the judgment");
11 *Sheldon v. Hundley*, 83 F.3d 231, 233 (8th Cir. 1996). A claim for damages based on allegations
12 that a plaintiff was completely denied the opportunity to put on a defense and that there was deceit
13 and bias on the part of the decisionmaker, for example, necessarily implies the invalidity of the
14 punishment imposed and is barred by *Heck*. *See Edwards*, 520 U.S. at 646-47.

## DISCUSSION

### *Heck* Bar

The undisputed facts demonstrate that Defendant is entitled to judgment as a matter of law. Firstly, there is no dispute that as a result of the guilty finding, Plaintiff was assessed 61 days of good time credits which was not subsequently overturned. A successful challenge to Plaintiff's RVR would therefore necessarily imply that Plaintiff had been unconstitutionally deprived of the 61 days of credits. Accordingly, Plaintiff's claim for damages is barred by *Heck* such that he cannot bring an action for damages against Defendant without first showing that the RVR has been invalidated. *See Edwards*, 520 U.S. at 645. He has not. A claim barred by *Heck* is not cognizable and therefore should be dismissed.

In opposition, Plaintiff asserts that *Heck* does not bar this action because he is not seeking restoration of good-time credits or a ruling that his RVR was invalid. (Pl's Opp. at 3, dkt. 27.) He

asserts that he is merely challenging the denial of due process. *Id.*[3] Plaintiff's argument is unavailing. A plaintiff's decision not to request relief for the loss of his earned time credits does not prevent the *Heck* bar from applying because a successful challenge to the validity of the procedures employed during the disciplinary hearing necessarily encompasses a determination that the prison cannot not validly impose any sanctions—including the revocation of earned time credits. *Hebrard v. Nofziger*, 90 F.4th 1000, 1011-12 (9th Cir. 2024) (citing *Edwards*, 520 U.S. 641).

Plaintiff also relies on *Muhammad v. Close*, 540 U.S. 749, 754-755 (2004). Pl.'s Opp. at 3. However, as Plaintiff himself points out, that case involved an allegation of retaliation against a prison officer for violations "that occurred after and outside the RVR hearing." *Id.* This action involves no such claim, and therefore *Muhammad* is not applicable.

Based on the foregoing, the claim is barred by *Heck* and should be dismissed.

**Procedural Due Process**

Even if the *Heck* bar did not apply, the undisputed facts show Plaintiff received all required procedural protections under *Wolff*. First, he received written notice of the RVR on January 31, 2024. *See supra* at 2. Second, the notice was provided three weeks before the hearing on February 24, 2024, which was far more time than the 24-hour requirement under *Wolff*. *Id.* Third, Defendant Valdez summarized in writing the evidence he relied on in finding Plaintiff guilty of the charge—Plaintiff's guilty plea and Sgt. De La Paz's report. *Id.* at 3. Fourth, the record shows that Plaintiff was given an opportunity to call witnesses and present evidence in his defense, but he did not. *Id.* Fifth, there was no need to assign a staff assistant under the regulations, nor did Plaintiff request staff assistance during the hearing. *Id.* at 2-3.

In opposition, Plaintiff asserts that he was summoned to the RVR hearing without any

---

[3] Plaintiff also alleges interference with court access involving e-filing which he asserts is an "independent basis for his procedural due process and access-to-courts claims, unrelated to the underlying RVR finding." Pl.'s Opp. at 2. However, these new allegations involve separate, distinct, and new causes of action, and are "unrelated" to the due process claim which is the basis for this suit. Accordingly, these new claims should be filed in a separate suit and may not be introduced into this one. *See Planned Parenthood of So. Arizona v. Neely*, 130 F.3d 400, 402 (9th Cir. 1997) (supplemental complaint cannot be used to introduce new and distinct cause of action).

1    prior written notice of the charges. Pl. Opp. at 6. However, this assertion is contradicted by the
2    RVR record as well as Plaintiff's deposition, during which he admitted to receiving and reading
3    the notice. Valdez Decl., Ex. B at 1; Ruhparwar Decl., Ex. A at 16:19-17:5, 51:10-17.
4    Accordingly, Plaintiff fails to establish the existence of a genuine dispute regarding proper notice.

5        Plaintiff also "contests that he 'pled guilty' in the sense alleged" and generally asserts that
6    "procedural barriers prevented his meaningful defense, including missing documents and inability
7    to access relevant video evidence." Pl.'s Opp. at 4. However, he provides no details describing
8    either the "missing documents" or "relevant video evidence," nor does he explain the "procedural
9    barriers" that prevented him from preparing a meaningful defense. Rather, the undisputed facts are
10   that despite receiving notice of the RVR weeks in advance and viewing the video footage before
11   the hearing, Plaintiff appeared at the hearing unprepared and initially indifferent as to the result.
12   He admits that he pleaded guilty outright simply because he wanted to return to the yard. The fact
13   that he later wanted to retract the guilty plea did not mean he was denied any of *Wolff*'s procedural
14   protections.

15       What remains is Plaintiff's challenge to the evidence used to find him guilty of the RVR.
16   First, he asserts he should have been allowed to withdraw his guilty plea. However, even if
17   Plaintiff's guilty plea had been stricken, there was still some evidence in the record to support
18   Defendant Valdez's decision under *Hill*, in particular Sgt. De La Paz's report. The only evidence
19   Plaintiff had to dispute that report was the Program Sgt.'s BWC video footage. Although it is
20   undisputed that this footage did not show Plaintiff refusing to exit the yard module and return to
21   his cell, it cannot be said that it was thereby clear evidence of his innocence, especially when it
22   merely showed the enclosed yards on the opposite side of the building from where the alleged
23   incident took place. *See supra* at 3, 4. As such, this footage did not provide any probative
24   evidence. On the other hand, Sgt. De La Paz's report was based on his eyewitness account of
25   Plaintiff refusing his direct order and then holding the yard hostage for over two hours. Defendant
26   Valdez's decision to rely on the report and disregard the video footage did not violate *Hill's* "some
27   evidence" standard. Moreover, it is undisputed that the video footage was later found to be from a
28   different time-period than the alleged time of the incident as well as showing a different yard than

where the alleged incident took place. *See supra* at 4. The second review as ordered by the OOA was conducted by a different supervisor, Lt. Thich, and then reviewed and approved by Associate Warden Pennisi. *Id.* The court notes that Plaintiff does not challenge how the second review was conducted or the result. Pl's. Opp. at 7-8. Accordingly, Plaintiff was not deprived of due process in connection with the video footage.

Plaintiff raised additional objections to Defendant's reply in a sur-reply. (Dkt. 37.) First, he mistakes the reply as another "motion to dismiss" and asserts that it is procedurally improper. *Id.* at 2. The objection is overruled as Defendant's filing was a properly filed reply in accordance with the court's Order of Service. (Dkt. 9 at 5.) Second, Plaintiff's objection to Defendant introducing irrelevant issues is also overruled as the court already noted Defendant's admitted error in referring to a charge for possession of a cell phone. *See supra* at 2, fn. 2. Third, Plaintiff objects to the selective submission of the deposition transcript as presenting an incomplete record which could unfairly prejudice him. Pl's Sur-Reply at 3. However, he also admits that the excluded parts of the transcript were not central to the merits of Defendant's motion. *Id.* Furthermore, if he was concerned about prejudice, Plaintiff could have submitted portions of the transcript with his opposition for the court to consider, but he did not. Accordingly, this objection is also overruled. Plaintiff next objects to the denial of access to evidence, i.e., the additional surveillance footage. *Id.* However, Plaintiff makes no showing that he attempted to obtain such footage through discovery and Defendants withheld such evidence. *See supra* at 3. Rather, the record shows that no other footage from that date was available. *Id.* Lastly, Plaintiff refers to Defendant faulting him for not e-filing certain responses as pretextual, (dkt. 37 at 4), but e-filing was not an issue raised in Defendant's summary judgment motion. Accordingly, the objection based thereon is overruled.

Based on the foregoing, the court finds Defendant Valdez did not violate Plaintiff's due process rights and is entitled to summary judgment.

**Qualified Immunity**

The defense of qualified immunity protects "government officials . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457

U.S. 800, 818 (1982). The rule of "qualified immunity protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Saucier v. Katz*, 533 U.S. 194, 202 (2001) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)). Defendants can have a reasonable, but mistaken, belief about the facts or about what the law requires in any given situation. *Id*. at 205. A court considering a claim of qualified immunity must determine whether the plaintiff has alleged the deprivation of an actual constitutional right and whether such right was clearly established such that it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted. *See Pearson v. Callahan*, 555 U.S. 223, 236 (2009) (overruling the sequence of the two-part test that required determining a deprivation first and then deciding whether such right was clearly established, as required by *Saucier*). The court may exercise its discretion in deciding which prong to address first, in light of the particular circumstances of each case. *Pearson*, 555 U.S. at 236.

A right is clearly established if it was "sufficiently clear [at the time of the conduct at issue] that every reasonable official would have understood that what he is doing violates that right." *Taylor v. Barkes*, 575 U.S. 822, 825 (2015); *Ohlson v. Brady*, 9 F.4th 1156, 1166 (9th Cir. 2021) (". . . a constitutional right is clearly established when 'any reasonable official in the defendant's shoes would have understood that they were violating [a plaintiff's constitutional right]." (quoting *Plumhoff v. Rickard*, 572 U.S. 765, 779 (2014))). The inquiry of whether a constitutional right was clearly established must be undertaken in light of the "specific context" of the case, not as a general proposition. *Saucier*, 533 U.S. at 202. The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted. *Id.* The plaintiff bears the burden of proving the existence of a "clearly established" right at the time of the allegedly impermissible conduct. *Maraziti v. First Interstate Bank*, 953 F.2d 520, 523 (9th Cir. 1992).

The court has not found a constitutional violation, but even if there was a violation, Valdez would be entitled to qualified immunity. Defendant asserts that to his knowledge, there is no clearly established law that a SHO violates an incarcerated person's due process rights if he fails to inquire about the availability of additional footage under the instant circumstances. (Dkt. 24 at 17). Defendant thus contends that reasonable prison staff would not have been aware that

Defendant's conduct constituted a constitutional violation. *Id.* In opposition, Plaintiff cites *Bounds v. Smith*, 430 U.S. 817 (1977), and *Silva v. Di Vittorio*, 658 F.3d 1090, 1103-04 (9th Cir. 2011), to contend that a reasonable officer in Defendant's position would know that obstructing an inmate's timely legal filing or ignoring the loss of submitted legal documents violates clearly established law protecting access to the courts and due process rights. Opp. at 4. However, this case does not involve an access to the courts claim, and the court has not granted Plaintiff leave to supplement this action with such a claim. *See supra* at 7, fn. 3. Accordingly, these cases are irrelevant and fail to establish the existence of a clearly established right. In his sur-reply, Plaintiff merely repeats his assertion that Defendant violated due process and again fails to establish the existence of clearly established right such that it would have been clear to a reasonable officer that his conduct was unlawful in the situation he confronted. Sur-reply at 3-4. Valdez is entitled to qualified immunity.

## CONCLUSION

Accordingly, for the reasons stated herein, Defendant's Motion for Summary Judgment (dkt. 24) is **GRANTED**. A separate judgment shall issue and the Clerk is requested to close this case. This order terminates Docket No. 24.

**IT IS SO ORDERED.**

Dated: January 6, 2026

ROBERT M. ILLMAN
United States Magistrate Judge